No. 77–1736.   Smith, President of the Village of Skokie, Illinois, et al. v. Collin et al.   C. A. 7th Cir. Certiorari denied.

Mr. Justice Blackmun, with whom Mr. Justice White joins, dissenting.

It is a matter of regret for me that the Court denies certiorari in this case, for this is litigation that rests upon critical, disturbing, and emotional facts, and the issues cut down to the very heart of the First Amendment.

The village of Skokie, Ill., a suburb of Chicago, in 1974 had a population of approximately 70,000 persons.   A majority were Jewish; of the Jewish population a substantial number were survivors of World War II persecution.   In March 1977, respondents Collin and the National Socialist Party of America, which Collin described as a "Nazi organization," publicly announced plans to hold an assembly in front of the Skokie Village Hall.   On May 2, the village enacted three ordinances. The first established a permit system for parades and public assemblies and required applicants to post public liability and property damage insurance.   The second prohibited the dissemination of material that incited racial or religious hatred with intent so to incite.   The third prohibited public demonstrations by members of political parties while wearing military-style uniforms.

On June 22, respondent Collin applied for a permit under the first ordinance.   His application stated that a public assembly would take place on July 4, would consist of persons demonstrating in front of the Village Hall, would last about a

half hour, and would not disrupt traffic. It also stated that the participants would wear uniforms with swastikas and would carry placards proclaiming free speech for white persons, but would not distribute handbills or literature. The permit was denied.

Skokie's Village Hall stood on a street that was zoned commercial. There were residential areas, however, adjoining to the North, South, and West. The front of the Village Hall was visible from dwellings in those areas.

Upon the rejection of the permit application, respondents filed a complaint in the United States District Court for the Northern District of Illinois against the president of the village of Skokie, its manager, its corporation counsel, and the village itself. Respondents asked that the ordinances be declared void and their enforcement enjoined. The District Court, after receiving evidence, ruled that the ordinances were unconstitutional on their face, and granted the requested declaratory and injunctive relief. It filed a comprehensive opinion. 447 F. Supp. 676 (1978). The United States Court of Appeals for the Seventh Circuit, with one judge dissenting in part, affirmed. 578 F. 2d 1197 (1978).

A permit then was issued to respondents for a demonstration on the afternoon of June 25, 1978, in front of the Village Hall. Respondents, however, shifted their assembly from Skokie to Chicago where activities took place on June 24 and July 9.

Other aspects of the controversy already have reached this Court. In April 1977, the Circuit Court of Cook County, Ill., entered an injunction against respondents prohibiting them, within the village, from parading in the National Socialist uniform, displaying the swastika, or displaying materials that incite or promote hatred against persons of the Jewish or any other faith. The Illinois Appellate Court denied an application for stay pending appeal. The Supreme Court of Illinois, in turn, denied a stay and also denied leave for an expedited appeal. Relief was sought here. This Court, *per curiam* but

918

by a divided vote, reversed the denial of a stay and remanded the case for further proceedings. *National Socialist Party* v. *Skokie,* 432 U. S. 43 (1977).

On remand, the Illinois Appellate Court reviewed and modified the injunction the Circuit Court had entered and this time upheld only that portion thereof that prevented the display of swastikas "in the course of a demonstration, march, or parade." *Village of Skokie* v. *National Socialist Party,* 51 Ill. App. 3d 279, 295, 366 N. E. 2d 347, 359 (1977). The Supreme Court of Illinois denied an application for stay pending expedited review. MR. JUSTICE STEVENS, as Circuit Justice, denied a stay of the injunction as so modified. 434 U. S. 1327 (1977). The Illinois Supreme Court ultimately reversed the remaining injunctive feature, "albeit reluctantly," and with one justice dissenting. 69 Ill. 2d 605, 619, 373 N. E. 2d 21, 26 (1978).

Thereafter, the village and its codefendants in the present federal litigation filed an application to stay the Seventh Circuit's mandate or, in the alternative, to stay enforcement of the injunction entered by the District Court. This Court, with two Justices dissenting, denied the application. 436 U. S. 953 (1978).

These facts and this chronology demonstrate, I believe, the pervading sensitivity of the litigation. On the one hand, we have precious First Amendment rights vigorously asserted and an obvious concern that, if those asserted rights are not recognized, the precedent of a "hard" case might offer a justification for repression in the future. On the other hand, we are presented with evidence of a potentially explosive and dangerous situation, enflamed by unforgettable recollections of traumatic experiences in the second world conflict. Finally, Judge Sprecher of the Seventh Circuit observed that "each court dealing with these precise problems (the Illinois Supreme Court, the District Court and this Court) feels the need to apologize for its result." 578 F. 2d, at 1211.

Furthermore, in *Beauharnais* v. *Illinois*, 343 U. S. 250 (1952), this Court faced up to an Illinois statute that made it a crime to exhibit in any public place a publication that portrayed "depravity, criminality, unchastity, or lack of virtue of a class of citizens, of any race, color, creed or religion," thereby exposing such citizens "to contempt, derision, or obloquy." The Court, by a divided vote, held that, as construed and applied, the statute did not violate the liberty of speech guaranteed as against the States by the Due Process Clause of the Fourteenth Amendment.

I stated in dissent when the application for stay in the present litigation was denied, 436 U. S., at 953, that I feel the Seventh Circuit's decision is in some tension with *Beauharnais*. That case has not been overruled or formally limited in any way.

I therefore would grant certiorari in order to resolve any possible conflict that may exist between the ruling of the Seventh Circuit here and *Beauharnais*. I also feel that the present case affords the Court an opportunity to consider whether, in the context of the facts that this record appears to present, there is no limit whatsoever to the exercise of free speech. There indeed may be no such limit, but when citizens assert, not casually but with deep conviction, that the proposed demonstration is scheduled at a place and in a manner that is taunting and overwhelmingly offensive to the citizens of that place, that assertion, uncomfortable though it may be for judges, deserves to be examined. It just might fall into the same category as one's "right" to cry "fire" in a crowded theater, for "the character of every act depends upon the circumstances in which it is done." *Schenck* v. *United States*, 249 U. S. 47, 52 (1919).