**Joseph D. ROGERS, Plaintiff,**

v.

**MOUNT UNION BOROUGH by Robert W. ZOOK, Mayor, Daniel Whitsel, Mayor, Joseph D'Angelo, Council Member, Norman Simpson, Council Member, Medio Alesi, Council Member, Guy Croyle, Council Member, Boy Gill, Council**

---

Member, Betty Flemming, Council Member, John Copenhaver, Council Member, Allen Welch, Council Member, David Harker, Patrolman, and Assistant Chief, Individually and in their official capacity, Defendants.

Civ. A. No. 1:CV–92–1371.

United States District Court,
M.D. Pennsylvania.

March 3, 1993.

MEMORANDUM

CALDWELL, District Judge.

We are considering defendants' motion to dismiss portions of the complaint under Fed. R.Civ.P. 12(b)(6) and to strike certain portions of the complaint under Fed.R.Civ.P. 12(f). This case involves allegations of racial discrimination and the complaint asserts claims based on 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. §§ 1985 and 1986, conspiracy to deprive plaintiff of his rights under the federal thirteenth and fourteenth amendments, state and federal employment discrimination statutes, and state-law wrongful discharge. We exercise jurisdiction according to 28 U.S.C. §§ 1331 and 1343.

## I

Plaintiff, a black man, is the former police chief of Mount Union Borough, Pennsylvania, having been hired in February, 1987. Plaintiff alleges that several members of the borough council argued against his selection because of his race. He asserts that he suffered racially discriminatory treatment throughout his tenure with the borough. The complaint includes a number of specific allegations, including denial of a pay raise, obstruction of plaintiff's attempts to properly perform his duties, improper suspensions, and removal of rank. Plaintiff's employment was terminated in January, 1991, and he filed the current lawsuit on September 30, 1992. On October 21, 1992, defendants filed the pending motion.[1]

## II

As a threshold matter, plaintiff has not indicated precisely which of defendants' alleged actions amount to actionable discrimination.[2] Upon reviewing the complaint, we believe our examination should focus on

Robert S. Mirin, Harrisburg, PA, for plaintiff.

Frank J. Lavery, Jr., Marshall, Dennehey, Warner, Coleman & Goggin, Harrisburg, PA, for defendants.

1. Defendants include Mount Union Borough, former and current Mayors Daniel Whitsel and Robert Zook, former or current borough council members Joseph D'Angelo, Norman Simpson, Medio Alesi, Guy Croyle, Boyd Gill, Betty Flemming, John Copenhaver, Allen Welch, and patrolman David Harker. The individuals are sued in both their individual and official capacities.

2. For example, title VII cases generally fall into categories such as failure to hire, failure to promote, wrongful demotion, or wrongful discharge. *See* Stephen M. Shulman & Charles F. Abernathy, *The Law of Equal Employment Opportunity* at ¶ 3.05[5][a] (1990).

plaintiff's termination. Plaintiff bolsters this conclusion in his brief opposing the current motion when he indicates that:

> These allegations set forth the defendants' racial discriminatory intent to harass and terminate the plaintiff. Since plaintiff's suit was brought within two years of the date upon which his employment ceased, all allegations concerning plaintiff's dismissal are appropriate before the Court.

Pl.Brief at 17. As plaintiff indicates, the cause of action arises from his discharge; the recitation of facts is offered as background and context.

### III

■■■ In considering a motion under Rule 12(b)(6), we must accept as true all the well-pleaded allegations of the complaint and construe them favorably to the plaintiff. We cannot grant the motion unless the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Labov v. Lalley*, 809 F.2d 220 (3d Cir.1987). A plaintiff bringing a cause of action under 42 U.S.C. § 1983 is held to a higher standard: he must allege with specificity the facts giving rise to his complaint. *McArdle v. Tronetti*, 961 F.2d 1083, 1088 (3d Cir.1992). There are principally two reasons underlying this requirement: (1) to protect state (or local) officials from a deluge of frivolous claims and (2) to allow state (or local) officials sufficient notice of the nature of the claims against them to enable them to respond. *Colburn v. Upper Darby Township*, 838 F.2d 663, 665 (3d Cir.1988).

Defendants contend that plaintiff's § 1983 claim lacks the specificity required by Third Circuit precedent because it does not describe particular facts and connect them with particular federal rights alleged to have been deprived. Plaintiff counters that the complaint specifically alleges facts that describe a violation of plaintiff's fourteenth amendment rights under color of state law. He offers *Sample v. Diecks*, 885 F.2d 1099 (3d Cir.1989), to support his argument.

> A plaintiff ... who brings a § 1983 suit based on a violation of the due process clause must allege and prove five things: (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected, to this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result ...

*Id.* at 1113. We do not read plaintiff's complaint to allege that he had either a protected liberty or property interest in his position with the borough. Not all employment involves a property or liberty right protected by the fourteenth amendment. *Board of Regents v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Without such an interest, no process is due. *Id.* The fourteenth amendment also insures equal protection. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Again, plaintiff has not plead such a claim with the specificity required under 42 U.S.C. § 1983. We will, then, dismiss Count II of the complaint without prejudice to plaintiff's right to file an amended complaint.

### IV

■■■ Count I of the complaint alleges a violation of 42 U.S.C. § 1981. Defendants have moved for its dismissal, arguing that § 1981 can not support a claim for racially motivated discharge.

Section 1981 forbids discrimination in the making and enforcement of contracts. In 1989, the United States Supreme Court held that claims of racially motivated discharge were not actionable under § 1981. *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *see also, Hayes v. Community General Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir.1991). Plaintiff does not dispute the effect of *Patterson*, but argues that the Civil Rights Act of 1991, Public L. No. 102–166, § 101, 105 Stat. 1071 (1991), amends § 1981 and reverses *Patterson*. The amendment reads as follows:

> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts ...

42 U.S.C. § 1981 (1991). We agree that the amended § 1981 reaches claims such as

plaintiff's. However, the amendment became effective November 21, 1991, more than ten months *after* plaintiff's discharge. We have previously joined the majority of courts in concluding that the Civil Rights Act of 1991 should not be applied retroactively. *Alexandre v. Amp, Inc.*, No. 90–0868, 1991 WL 322947 (M.D.Pa. December 5, 1991) (Caldwell, J.); *see also, Wilhide v. Delta Packaging, Inc., et al*, slip op. no. 92–1273 at typeset 3 (M.D.Pa. December 10, 1992) (Caldwell, J.). We have previously declined to apply the 1991 Act retroactively specifically in the § 1981 context. *Murray v. Caterpillar, Inc.*, slip op. no. 92–871 (M.D.Pa. November 4, 1992) (Caldwell, J.). We are without guidance from the United States Supreme Court or the Third Circuit.[3] We will, then follow our prior holding and dismiss Count I.

## V

Defendants ask that we dismiss the action against all the individuals named as defendants, because they are sued in their official capacities and the claims against them merge with the claims against the Borough.

To buttress this argument, defendants offer *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), and *Gregory v. Chehi*, 843 F.2d 111 (3d Cir.1988). Both cases support the proposition that a suit against individual defendants in their *official* capacities might well merge with the suit against the municipal entity. 843 F.2d at 119–20. Plaintiff has offered no argument on this issue. However, our review of *Gregory* leads us to conclude that defendants' reliance is misplaced. Plaintiff has expressly sued the named individuals in both their official and individual capacities. To the extent that the individuals are sued in their individual

capacities, no merger can occur. We must, therefore, deny defendants' request.

## VI

■ Defendants have moved for dismissal of Count VI, based on title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, for failure to state a claim. Fed. R.Civ.P. 12(b)(6). Essentially, defendants argue that the complaint fails to make out a *prima facie* case for discriminatory discharge. *See Dupont v. Stroheim and Romann, Inc.*, slip op. no. 86 Civ. 198, 1986 WL 13469 (S.D.N.Y. November 20, 1986).

■ Absent direct proof of purposeful discrimination, a title VII plaintiff must establish an appropriate inference of discriminatory intent through the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. The test must be varied to consider different employment situations and different alleged acts of discrimination. The Third Circuit has suggested that a plaintiff alleging discriminatory discharge must prove (1) he is a member of a protected class, (2) he was qualified for the position from which he was discharged, and (3) others not in the protected class were treated more favorably. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir.1990). The Third Circuit has admonished courts to avoid mechanical applications of the standard:

> Simply put, a Title VII plaintiff has established a *prima facie* case when sufficient evidence is offered such that the court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons.

---

3. On February 22, 1993, the United States Supreme Court granted *certiorari* in two cases, *Landgraf v. USI Film Products*, No. 92–757, and *Rivers, et al. v. Roadway Express*, No. 92–938, —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993), to settle the question of the retroactivity of the Civil Rights Act of 1991. While the Third Circuit has yet to weigh in, there is a split among the circuits that have considered the issue. *See, e.g., Estate of Barbara L. Reynolds v. Martin*, 985 F.2d 470 (9th Cir.1993) (1991 Act applies retroactively); *Von Zuckerstein v. Argonne Nat'l Laboratory*, 984 F.2d 1467 (7th Cir.1993) (1991 Act does not apply retroactively); *Frazier v. Garrison*

*I.S.D.*, 980 F.2d 1514 (5th Cir.1993) (1991 Act does not apply retroactively); *Hicks v. Brown Group, Inc.*, 982 F.2d 295 (8th Cir.1992) (1991 Act does not apply retroactively); *Korte v. Diemer, et al*, 983 F.2d 1067 (6th Cir.1992) (1991 Act does not apply retroactively); *Gersman v. Group Health Ass'n*, 975 F.2d 886 (D.C.Cir.1992) (portions of the 1991 Act do not apply retroactively). For an excellent discussion of the issue, *see* Kristine N. McAlister, Note, *Retroactive Application of the Civil Rights Act of 1991*, 45 Vand.L.Rev. 1319 (1992) (concluding that Act should not be applied retroactively).

*EEOC v. Metal Service Co.,* 892 F.2d 341, 348 (3d Cir.1990). In considering a motion under Rule 12(b)(6), we must accept as true all the well-pleaded allegations of the complaint and construe them favorably to the plaintiff. *Labov, supra.* In the context of the current motion, we believe that to mean that plaintiff must minimally plead a *prima facie* case of discrimination. *See Dupont, supra.* We conclude that the complaint makes out a case sufficient to withstand the motion to dismiss. Plaintiff alleges that he is black and that he was qualified for the position of police chief. While not directly averring that officers not in any protected class were treated preferentially, plaintiff does assert, *inter alia,* that he was treated differently than other officers. We will, therefore, deny the motion to dismiss Count VI.[4] However, Count VI includes a claim for compensatory and punitive damages. These remedies were not available in title VII cases until the Civil Rights Act of 1991 was enacted. *United States v. Burke,* —— U.S. ——, ——, 112 S.Ct. 1867, 1873, 119 L.Ed.2d 34, 45 (1992) ("Title VII does not allow awards for compensatory or punitive damages; instead, it limits available remedies to backpay, injunctions, and other equitable relief."). As we have noted, the Civil Rights Act of 1991 does not apply retroactively so as to encompass plaintiff's claim. We will, therefore, dismiss the claims for compensatory and punitive damages in Count VI.

## VII

■ Count III asserts claims under 42 U.S.C. §§ 1985 and 1986. Section 1985 proscribes either public or private conspiracies to deprive persons of constitutionally protected rights. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Section 1986, a companion statute, allows an action against a party who knows that a § 1985 deprivation is going to take place, has the power to prevent it, and fails to do so. *See Buck v. Board of Elections,* 536 F.2d 522 (2d Cir.1976).

■ Defendants have moved to dismiss Count III for failure to state a claim. As a threshold matter, we note that a § 1986 suit may only be maintained in tandem with a § 1985 claim. If we were to dismiss plaintiff's § 1985 claim, we would also have to dismiss the § 1986 claim. *See Church of Human Potential, Inc. v. Vorsky,* 636 F.Supp. 93, 96 (D.N.J.1986).

■ Like § 1983 claims, § 1985 claims must be pled with factual specificity. *See Sparks v. Duval County Ranch Co., Inc.,* 604 F.2d 976, 978 (5th Cir.1979). Mere conclusory allegations that a conspiracy existed will not survive a motion to dismiss. *D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1377 (3d Cir. 1992), *citing Robinson v. McCorkle,* 462 F.2d 111, 113 (3d Cir.1972).

Plaintiff points to several events described in his complaint as fulfilling the specificity requirement. Each incident involves the borough council making decisions inimical to plaintiff.[5] In reviewing a Rule 12(b)(6) motion, we are to take as true all well-pleaded allegations of the complaint and determine if they would comprise the elements of a cause of action. Assuming, *arguendo,* that the assertions are true, we believe them to be insufficient to raise an inference of a conspiratorial arrangement and we will dismiss Count III.

---

4. Plaintiff argues that he met the pleading requirement by averring that "[a]ll conditions precedent to the maintenance of this lawsuit have been satisfied," citing our opinion in *Spidle v. Commonwealth of Pennsylvania Office of Budget,* 660 F.Supp. 941, 944 (M.D.Pa.1987) (Caldwell, J.). This misconstrues the holding of *Spidle.* In *Spidle,* the conditions precedent were the filing of charges with state and federal agencies. We held that a plaintiff need only generally plead that he has done so. *Id.* at 944. The general pleading we allowed was as to administrative matters, not the elements of the cause of action.

5. *See, e.g.,* ¶¶ 21(a)–28(d) (council granted raises to all police department employees except plaintiff, citing probationary period), ¶¶ 34(a)–37(c) (borough officials produced new police policy manual without consultation with plaintiff), ¶¶ 61(a)–61(d) (council decided to eliminate ranks within police department), and ¶¶ 65–67(a) (borough officials suspended plaintiff and council fired him).

## VIII

■ Defendants claim qualified immunity shields them from this litigation.

We note at the outset of this discussion that in the qualified immunity context there is a distinction between suits against government officials in their official capacities and in their personal capacities. In a case such as the one at bar, defendants may only claim qualified immunity to the extent that they are sued in their personal capacities. *Hafer v. Melo*, — U.S. —, —, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). Further, we will follow those courts that hold that title VII suits are not appropriately brought against government officials in their personal capacities. *See Yeldell v. Cooper Green Hospital, Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992). We will dismiss the title VII claims against defendants insofar as they are sued personally rather than officially.

■ We also note that members of borough councils may enjoy absolute immunity from suits under §§ 1983, 1985, and 1986 for actions taken in their legislative capacity. *Aitchison v. Raffiani, et al.*, 708 F.2d 96, 98–99 (3d Cir.1983). The vote to discharge plaintiff was not legislative, however. Courts have recognized that legislatures may act both legislatively and administratively. *Abraham v. Pekarski, et al.*, 728 F.2d 167, 174 (3d Cir.1984); *see also, Rateree v. Rockett*, 630 F.Supp. 763, 770 (N.D.Ill.1986). Pennsylvania courts have stated that votes on employment contracts are administrative rather than legislative. *McAdoo Borough v. Commonwealth of Pennsylvania, et al.*, 79 Pa.Commw. 158, 164, 469 A.2d 693, 696 (1983). We conclude, then, that the vote to discharge plaintiff was administrative and does not fall within the protection of absolute immunity.

The Third Circuit recently discussed qualified immunity and its proper application in *D.R. by L.R. v. Middle Bucks Area Vocational Technical School, supra.*

> Officials exercising discretionary powers are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Id.*, quoting *Siegert v. Gilley*, — U.S. —, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). In *Siegert*, the Supreme Court noted that

> [a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.

*Id.* at —, 111 S.Ct. at 1793. In the instant case, plaintiff points to his claim that defendant violated his fourteenth amendment rights. As we have determined that plaintiff has failed to specifically plead a § 1983 cause of action, we must conclude that plaintiff has failed to allege a constitutional violation. However, there remains the title VII claim; certainly, employers could reasonably be expected to know that they may not discriminate against employees on the basis of race. Defendants, then, may not rely on qualified immunity to shield them from plaintiff's title VII claim.[6]

## IX

■ Defendants argue that the Borough of Mount Union itself is immune from suit under 42 U.S.C. § 1983. Although we have dismissed that claim for failure to plead with specificity, we will briefly address this issue as it would likely be relevant to any amended complaint.

■ Municipalities may not be held liable under a theory of *respondeat superior* in § 1983 cases. *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). They may be held liable if the challenged action is in keeping with a policy or custom of the municipality. *Monell, supra* at 694, 98 S.Ct. at 2037.

As we have focused on plaintiff's discharge, we believe the proper inquiry under *Monell* to be whether the borough council vote to terminate plaintiff's employment amounts to a borough policy. We conclude that it does.

---

6. As we have dismissed without prejudice plaintiff's § 1983, § 1985, and § 1986 claims, we will not examine the applicability of qualified immunity to those claims at this point.

The policy question centers around whether the policy was adopted by the officials responsible for making policy in a particular area of a municipality's affairs or whether the action was performed by officials with final policy-making authority. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). By voting, the borough council sets forth policy for the borough itself. We conclude that the majority vote of the borough council to discharge plaintiff amounts to an official policy such that the borough is not immune from the § 1983 suit. *See McGee v. South Pemiscot School District R–V, et al.,* 712 F.2d 339, 344 (8th Cir.1983).

The immunity issue does not arise in the title VII context. A 1972 amendment to title VII subjects local governments to the same liability as private employers. *Dothard v. Rawlinson,* 433 U.S. 321, 331 n. 14, 97 S.Ct. 2720, 2728 n. 14, 53 L.Ed.2d 786 (1977).

### X

■ Defendants argue that plaintiff's claim under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.Stat.Ann. §§ 951–963 (Purdon 1991 and Supp.1992), should be dismissed for failure to exhaust administrative remedies. Defendants' argument is twofold: (1) that plaintiff's claim that he was denied a raise based on his race is collaterally estopped by a resolution before the Pennsylvania Human Relations Commission ("PHRC") and (2) that a currently pending charge before the PHRC must be resolved before we can consider the matter.

While the parties concede that collateral estoppel may be applied in such a setting, we believe defendants' argument is misdirected. The case at bar, as we have noted, focuses on plaintiff's discharge. A settlement of his pay-raise complaint would not preclude a later consideration of his discharge. Plaintiff's description of the pay-raise conflict served only to more fully develop his claim that defendants fired him for impermissible purposes.

There is, then, the matter of the current PHRC charge. While, ordinarily, plaintiff would be required to await disposition by the Commission, the Human Relations Act allows an alternative. Section 962(c) provides that if a year passes after a charge has been filed with the Commission and no conciliation agreement is reached, the Commission shall notify the complainant of his right to seek immediate judicial redress. In his complaint, plaintiff alleges that more than a year has passed. While plaintiff does not indicate that the Commission has issued the appropriate notice, the lack of issuance of a notice does not bar a civil action. *Snyder v. Pennsylvania Ass'n of School Retirees,* 389 Pa.Super. 261, 566 A.2d 1235 (1989). We conclude, therefore, that defendants' exhaustion argument lacks merit.

### XI

■ Defendants argue that we should dismiss all punitive damages claims in the complaint because plaintiff has failed to allege that defendants knowingly and maliciously deprived him of his civil rights. As we have noted, we have already determined that punitive damages are not available in plaintiff's title VII claim. As we have dismissed all other federal claims, we will not address the punitive damages issue as it regards those allegations except to note that punitive damages are not available in suits against municipalities under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

■ Count VII sets forth a claim under Pennsylvania's Human Relations Act ("PHRA"). 43 Pa.Stat.Ann. §§ 951–963 (Purdon 1991 and Supp.1992). We will decline to dismiss the punitive damages claim in the state-law allegation because a PHRA claimant may be awarded punitive damages. *Cain v. Hyatt,* 734 F.Supp. 671 (E.D.Pa. 1990). As in other cases, punitive damages in the PHRA setting require proof that a defendant ·knowingly and maliciously deprived a plaintiff of his civil rights. *Id.* After careful scrutiny of the complaint, we believe plaintiff's punitive damages claim can survive the minimum pleading required to surmount a Fed.R.Civ.P. 12(b)(6) motion to dismiss.

## XII

Defendants also ask that, to the extent that plaintiff's claims are predicated upon events occurring more than two years before the filing of the complaint, we dismiss those claims as beyond the statute of limitations.

We initially note that the complaint was filed on September 30, 1992. While § 1983 includes no statute of limitations, the Supreme Court has held that actions under § 1983 are governed by state personal injury statutes of limitations. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).[7] The Pennsylvania statute of limitations for personal injury suits is two years. 42 Pa.Cons.Stat.Ann. § 5524(2) (Purdon 1992).

Defendants invite us to conclude that the complaint is time-barred to the extent that it is based on conduct that occurred more than two years before its filing. We decline to do so. Defendants have asked us to focus on plaintiff's discharge as police chief of Mount Union Borough. In doing so, we note that his employment terminated on January 10, 1991, less than two years before the complaint was filed. The conduct that is alleged to have occurred more than two years before the filing is not at the core of plaintiff's complaint; it is his discharge that gives rise to his cause of action. The description of his tenure as police chief is presumably offered to support plaintiff's contentions concerning the borough council's motives in terminating his employment. Defendant's statute of limitations defense to the § 1983 suit is without merit.

In focusing on plaintiff's discharge, we note that certain named defendants were no longer in office at the time of the discharge and, thus, are not appropriate defendants. *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561, 569 (1976). Plaintiff was discharged January 10, 1991. Former Mayor Daniel Whitsel relinquished the mayor's position on December 10, 1989, thirteen months before plaintiff's discharge. Former borough council member Allen Welch left that body in June of 1990. Former council members Joseph D'Angelo and Norman Simpson were apparently no longer members of the council at the time of the discharge vote, their terms ending on the same date as the vote.[8] In each case, the defendants could not have been involved in the act giving rise to this litigation, namely the termination of plaintiff's employment. We will, therefore, dismiss the complaint against them. Additionally, plaintiff has named patrolman David Harker. The only allegation made against Harker is that he was insubordinate and went unpunished at the direction of certain of the other defendants. There is no hint that he played any part in plaintiff's discharge. We will, then, also dismiss the complaint against him.

## XIII

Finally, defendants move under Fed. R.Civ.P. 12(f) for dismissal of certain paragraphs of the complaint as being immaterial, impertinent, or scandalous. Such matter should only be stricken if it is clear that it is immaterial to the cause of action claimed. *See Resolution Trust Corporation v. KPMG Peat Marwick*, No. 92–1373, 1992 WL 392591, 1992 U.S.Dist. LEXIS 19940 (E.D.Pa. December 18, 1992).

Defendants argue that the paragraphs in question are either immaterial, scandalous, or both. Our review of the complaint leads us to conclude that most of the challenged averments *could* be material and, thus,

---

7. Defendants' motion addresses itself only to the § 1983 claim. Therefore, we will only consider the statute of limitations issue in the context of the § 1983 suit. Although we have required plaintiff to amend Count II, which alleges § 1983 violations, we will address the statute of limitations question as a guide to the parties for future conduct in this litigation with the presumption that there will be an amended complaint.

8. The complaint is ambiguous as to the status of the various defendants at various times. Plaintiff lists those members of the borough council who voted in favor of his discharge, but fails to indicate which three voted against it. So, either Simpson and D'Angelo were no longer voting members at the January 10, 1991, meeting or they voted *against* discharging plaintiff. We presume the former.

should not be stricken.[9] However, there is a series of paragraphs that are certainly immaterial and probably scandalous. They regard the activities in Mount Union Borough of the Ku Klux Klan, an organization that has, to say the least, a history of discrimination against blacks. Plaintiff asserts that members of the Klan attended borough council meetings and that the council "did nothing to disassociate itself from the Klan or its remarks on that occasion or thereafter." We do not find that the lack of an affirmative effort to refute statements is material to the claim raised, namely racial discrimination. Certainly, when Nazis marched in Skokie, Illinois, in 1978, it did not indicate philosophical agreement by village authorities. *See Collin v. Smith,* 578 F.2d 1197 (7th Cir.), *cert. den'd sub nom.,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978). Plaintiff's allegations that the Mount Union mayor's son solicited residents to join the Klan and sought information to damage plaintiff's reputation can not properly be viewed as material to the actions and motivations of the council and the mayor. We will, then, strike paragraphs 58(a) and (b), 59(a) and (b), 60, 62(a) and (b), 63, and 64 pursuant to Fed.R.Civ.P. 12(f).

## XIV

In addition to his claims under 42 U.S.C. §§ 1983, 1985, and 1986, plaintiff includes a separate allegation of violations of his thirteenth and fourteenth amendment rights. Such a claim is unnecessarily redundant. Section 1983 is the "main vehicle" for thirteenth and fourteenth amendment claims. *Archie v. City of Racine,* 847 F.2d 1211, 1226 (7th Cir.1988) (Posner, J., concurring). In Counts II and III, plaintiff seeks to vindicate the same rights invoked in Count V, the independent allegation under the thirteenth and fourteenth amendments. Therefore, pursuant to Fed.R.Civ.P. 12(f), we will also strike Count V as redundant.

## XV

In conclusion, we note that the filings to date in this case are far from models of careful and concise legal drafting. In the interests of an efficient and just resolution of this matter, we strongly urge the parties to more carefully draft further submissions.

We will issue an appropriate order.

## ORDER

AND NOW, this 3rd day of March, 1993, upon consideration of defendants' motion to dismiss, it is ordered that:

1. The motion is granted in part.

2. Count I is dismissed.

3. Count II is dismissed.

4. Count III is dismissed.

5. The claims for compensatory and punitive damages in Count VI are dismissed.

6. The title VII claim in Count VI is dismissed as against the defendants in their individual capacities.

7. Paragraphs 58(a) and (b), 59(a) and (b), 60, 62(a) and (b), 63, and 64 of the complaint are stricken pursuant to Fed. R.Civ.P. 12(f).

8. Count V is stricken as redundant pursuant to Fed.R.Civ.P. 12(f).

9. The complaint is dismissed against defendants Daniel Whitsel, Allen Welch, Joseph D'Angelo, Norman Simpson, and David Harker.

10. The motion is denied in all other respects.

---

**9.** Most of the paragraphs in question describe activities of the defendants that might indicate a discriminatory animus toward him, including excluding him from police command decisions.