Karen **GRIGSBY** and Jeffrey **Brown Plaintiffs**

v.

Yvette **KANE, et al., Defendants**

No. Civ.A. 1CV99–2083.

United States District Court, M.D. Pennsylvania.

March 19, 2003.

Karen Grigsby, Lebanon, PA, Pro se.

Don Bailey, Harrisburg, PA, for Plaintiff Brown.

James P. Golden, Jane B. LaPorte, Hamburg & Golden, P.C., Philadelphia, PA, for Commonwealth Defendants.

James L. Goldsmith, Brett M. Woodburn, Caldwell & Kearns, Harrisburg, PA, for PA Association of Realtors.

*MEMORANDUM AND ORDER*

SLEET, District Judge.

**I. INTRODUCTION**

On December 2, 1999, the plaintiffs, Karen Grigsby ("Grigsby") and Jeffrey Brown ("Brown"), filed the above-captioned action alleging civil rights violations. Brown and Grigsby filed separate amended complaints on March 16, 2000 and March 30, 2000, respectively. Grigsby filed a second amended complaint on June 18, 2001. In her complaint, Grigsby alleges violations of 42 U.S.C. §§ 1981, 1983, 1985, and 1986. Brown alleges violations of 42 U.S.C. § 1983.

Presently before the court are the defendants' omnibus motions to dismiss, Brown's motion to sever, and Grigsby's motion to disqualify the law firm of Hamburg & Golden, P.C.

**II. BACKGROUND**

Grigsby and Brown once worked as attorneys for the State of Pennsylvania's Bureau of Professional Licensing and Occupational Affairs ("the Bureau"). The Bureau oversees the conduct of doctors, dentists, nurses, and other professionals in order to determine whether they are complying with the relevant state laws governing their occupations.

According to the complaints, once a new political administration took office, the Bureau established a quota system to use when determining which healthcare professionals should be prosecuted for violating the law. Grisgby and Brown spoke out against this new policy. As a result, they claim they were fired. Grigsby also claims that, prior to her termination, she was otherwise discriminated against based on her race.

Grigsby and Brown now seek to recover for these purported wrongs against numerous state employees associated with the Bureau, as well as from the former Secretary of the Commonwealth ("the Commonwealth defendants"), and several private entities.[1] In his amended complaint, Brown also seeks certification of two classes.

1. Because the former Secretary of the Commonwealth is now a sitting federal judge in the Middle District of Pennsylvania, the remaining judges in the Middle District recused themselves. It is for this reason that this court has been asked to preside over the case.

## III. STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Thus, in deciding a motion to dismiss, the factual allegations of the complaint must be accepted as true. *See Graves v. Lowery,* 117 F.3d 723, 726 (3d Cir.1997); *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.,* 838 F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3rd Cir.1997). A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves,* 117 F.3d at 726; *Nami,* 82 F.3d at 65 (both citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Thus, in order to prevail, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## IV. DISCUSSION

### A. Brown's Motion to Sever

■ Under Rule 21, "[a]ny claim against a party may be severed and proceeded with separately." FED. R. CIV. P. 21 (1999). Applying this standard, the court has virtually unfettered discretion in determining whether or not severance is appropriate. *See Rodin Properties–Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.,* 49 F.Supp.2d 709, 721 (D.N.J.1999).

■ In the present case, the court concludes that Grigsby and Brown have alleged two sets of claims that are factually dissimilar. Indeed, the only group of defendants common to both plaintiffs is the Commonwealth defendants. Yet, Grigsby appears to seek recovery from these defendants based primarily on employment discrimination due to race. Brown, on the other hand, alleges that he was fired in retaliation for exposing Bureau's allegedly illegal "quota" system to the Pennsylvania Association of Realtors. Thus, Grigsby's allegations concerning her work environment and the manner in which cases were assigned to her are completely distinct from any of Brown's allegations.

Additionally, Brown and Grigsby have each filed independent amended complaints. It is apparent from these complaints that the rift between the plaintiffs has grown. Specifically, Brown alone has added the Pennsylvania Association of Realtors as a defendant. Grigsby, on the other hand, seeks damages from the Legal Aid Society of Chester County and two of its employees, as well as from David Dearden, Esquire and his law firm. The claims against these various defendants are distinct to the individual plaintiffs.

Thus, while the court is mindful that Grigsby's suit may encompass some of Brown's factual allegations, the court concludes that it would lead to substantially more confusion and prejudice for all parties concerned were the court not to sever the cases. In accordance with the court's December 19, 2000 oral ruling, the cases will not be severed through discovery. They will, however, be severed for purposes of dispositive motion practice and trial.

## B. The Commonwealth Defendants' Motion to Dismiss

### 1. Brown's Amended Complaint

 As the court noted earlier, Brown purports to bring a civil rights class action on behalf of two classes of persons. Class A is defined as a class of Bureau attorneys and employees who were pressured, coerced, or otherwise forced to participate in the quota system. The number of class A members is alleged to be about ten. In his response to the present motion, Brown speculates that the number could rise to twenty or thirty. He does not, however, provide a basis for such speculation, reasonable or otherwise. Given the stated estimate of ten class members, and the pure speculation that twenty or thirty people could join the class, the court finds that Brown has failed to meet the numerosity requirement of Federal Rule of Civil Procedure 23. Each of these prospective class members could be joined in the case with relative ease, should they so desire. Thus, the court will decline to certify this class.

Class B is defined as a class of professional licensees who were allegedly subjected to prosecution to satisfy the Bureau's quota system in violation of their due process rights. However, the complaint itself is devoid of any mention of a class B representative. More important, neither Brown nor Grigsby is a "professional licensee" who has been subjected to prosecution to satisfy a quota system, nor do they allege to be so. Thus, the court concludes that Brown lacks standing to bring this class action suit.

Brown's Amended Complaint also includes a non-class action civil rights claim pursuant to 42 U.S.C. § 1983. Specifically, Brown alleges that he was terminated as a result of his open resistance and criticism of the Bureau's illegal quota system. Brown concedes that he has sued the Commonwealth defendants in their individual capacities only. To the extent the complaint alleges official capacity claims, they are clearly barred by the 11th Amendment and must be dismissed. The Commonwealth Defendants' briefs do not indicate that they have moved to dismiss the individual capacity claims at this time. The court will not, therefore, address those claims.

 Brown's Amended Complaint also includes a state law claim for wrongful discharge. The defendants, however, argue that they are shielded from liability by the State of Pennsylvania's sovereign immunity. *See* 1 Pa.C.S.A. § 2310. Specifically, the Pennsylvania sovereign immunity statute states that, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity...." While it is true that Pennsylvania has waived its sovereign immunity with respect to certain types of claims, it has not waived its immunity with respect to claims for wrongful discharge.

Moreover, Brown has not alleged that the defendants acted outside the scope of their employment. Indeed, his allegations describe the defendants as performing job-related functions. Thus, due to the absence of a colorable allegation that the Commonwealth defendants were acting outside of their employment, the court concludes that Brown's wrongful discharge claim is barred by the doctrine of sovereign immunity.

### 2. Grigsby's Second Amended Complaint

Grigsy's complaint contains counts premised upon 42 U.S.C. §§ 1981, 1983, 1985 and 1986. As with Brown's claims, to the extent any of these claims are brought against the Commonwealth defendants in their official capacities, they are barred by

the Eleventh Amendment. The defendants also assert that Count III of Grigsby's Second Amended Complaint must be dismissed as to them in its entirety. The court agrees.

In Count III, Grigsby alleges a conspiracy in violation of 42 U.S.C. §§ 1985 and 1986. In order to state a claim under Section 1985, a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *See Griffin v. Breckenridge*, 403 U.S. 88, 103, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Moreover, in stating a claim for conspiracy, the plaintiff may not merely make conclusory allegations of conspiracy. *See Rogers v. Mount Union Borough*, 816 F.Supp. 308, 314 (M.D.Pa.1993). Rather, only allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient. *See Loftus v. SEPTA*, 843 F.Supp. 981, 986 (E.D.Pa.1994).

In the present case, Grigsby alleges that Legal Aid of Chester County ("Legal Aid") hired her in March 2000. She further states that Legal Aid became aware of her lawsuit against the Commonwealth shortly thereafter. Legal Aid terminated her employment in September 2000. She appealed this decision to the Grievance Committee, which upheld the decision on October 5, 2000. However, Grigsby contends that a member of the Committee is affiliated with the same law firm that represented a doctor whose license application Grigsby had fought against as a Commonwealth attorney.

Thus, based on these allegations, Grigsby contends that Legal Aid and the Commonwealth defendants conspired to terminate her.

The court finds that Grigsby has failed to adequately allege the existence of a conspiracy. Specifically, she has failed to allege material facts demonstrating the existence and scope of the conspiracy, including specific facts suggesting that there was a mutual understanding among the conspirators to take action directed toward an unconstitutional end. Therefore, Count III of her Second Amended Complaint must be dismissed. Finally, because Grigsby has failed to pled a viable Section 1985 claim, her Section 1986 claim must likewise be dismissed. *See Brawer v. Horowitz*, 535 F.2d 830, 841 (3d Cir.1976).

With regard to the remaining claims against them, the Commonwealth defendants request that both Grigsby and Brown be required to file amended complaints which set forth a short and plain statement of their claims, with concise factual allegations supporting such claims. Because the court finds both complaints as currently written to be adequate to put each defendant on notice of the claims against him or her, the court will deny this request.

### C. The Legal Aid Defendants' Omnibus Motions

In her second amended complaint, Grigsby alleges that Legal Aid, Robert F. Adams ("Adams"), and Carolyn E. Johnson ("Johnson") (collectively "the Legal Aid defendants") were involved in a conspiracy to violate her rights in violation of 42 U.S.C. §§ 1985 and 1986. In response, the Legal Aid defendants each filed the following omnibus motions: (1) to dismiss for insufficient process; (2) to dismiss for failure to state a claim, or alternatively for a more definite statement; (3) to dismiss

for improper venue, and (4) to sever. Because the court concludes that Grisgby has failed to state a claim upon which relief can be granted, the court need not address the Legal Aid defendants' remaining motions.

The same allegations underlying Grigsby's Section 1985 claim against the Commonwealth defendants are relevant here.[2] In essence, Johnson, the Executive Director for Legal Aid, hired her on March 20, 2000. Shortly thereafter, Johnson became aware of Grigsby's complaint against the Commonwealth defendants. Johnson terminated Grigsby on September 13, 2000.

On October 5, 2000, Grigsby filed a formal grievance and requested a conference with the Grievance Committee. On October 11, 2000, the Committee upheld Johnson's termination of Grigsby in a decision signed by Chairman Adams. This decision indicated that Adams' law firm was, or is, affiliated with the law firm that represented a doctor whose license application Grigsby had fought against as a Commonwealth attorney.

Based on these allegations, Grigsby then summarily states that Legal Aid's termination of her employment was in retaliation for her exercise of her First Amendment rights in connection with the doctor's licensure application. She further states that the law firm Kaleogredis, Tsoules and Sweeney, Ltd. was involved in the decision to fire her from the Commonwealth of Pennsylvania as well as from Legal Aid.

Drawing all reasonable factual inferences in favor of Grigsby, the court must conclude that she has failed to adequately allege a relationship between her termination from the Commonwealth of Pennsylvania and Legal Aid. Specifically, she fails to allege how Legal Aid was involved in a conspiracy to violate her civil rights or how it participated with the other defendants to do so when it determined that her employment should be terminated. Moreover, with regard to Adams, Grigsby has failed to allege that he played any role in her termination from the Commonwealth of Pennsylvania, or that he was even aware of that termination until after she had been terminated from Legal Aid. With regard to Johnson, as with Adams and Legal Aid, Grigsby has failed to allege how, when, and where Johnson conspired with another person or persons to deprive her of her civil rights. Given the abundance of conclusory allegations, and the lack of factual specificity, in the complaint, the court must conclude that Grigsby has failed to state a claim upon which relief can be granted with regard to all three of these defendants.[3]

Finally, because Grigsby has failed to pled a viable Section 1985 claim, her Section 1986 claim must likewise be dismissed. *See Brawer v. Horowitz,* 535 F.2d at 841.

**D. Dearden's Motion to Dismiss**

David Dearden, Esq., and Kalogredis, Tsoules, and Sweeney, Ltd. (the "Dearden defendants") likewise seek to dismiss Grigsby's Second Amended Complaint.

---

2. Grigsby's Second Amended Complaint does not does not seek to hold the Legal Aid defendants liable for Section 1981 or 1983 violations.

3. As an additional ground for dismissing the claims against the Legal Aid defendants, the court notes that Grigsby has failed to serve them in accordance with Federal Rule of Civil

Procedure 4(c)(2), (e) and (h). In her response, Grigsby concedes that they have not yet been properly served. Given her knowledge that they have not yet been served, and her decision not to act on that knowledge, the court concludes that dismissal on the ground of improper service is also warranted.

For the following reasons, the court will grant this motion.

Count I of Grigsby's Second Amended Complaint fails to assert any facts involving these defendants, nor does the complaint elsewhere attribute any specific conduct to them which could form the basis of a Section 1981 claim. The court will, therefore, dismiss this count.

Count II of the complaint alleges Section 1983 violations. The complaint does not, however, allege that these defendants acted under the color of state law either by being employed by the Commonwealth, or through any nexus between them and any named state actor. Therefore, the court will dismiss this count.

■ Count III alleges Section 1985 violations. As with the Commonwealth defendants and the Legal Aid defendants, Grigsby has failed to adequately plead a conspiracy claim involving the Dearden defendants. Specifically, Grigsby contends that she "believes" these defendants were involved in the decision to terminate her employment with both the Bureau and Legal Aid. Her believe, however, is unsupported by any specific, factual allegations of an agreement or understanding indicative of a conspiracy.

Finally, in the absence of a valid Section 1985 claim, Grisgby's Section 1986 claim against the Dearden defendants must likewise fail. *See Brawer,* 535 F.2d at 841.

### E. Pennsylvania Association of Realtor's Motion to Dismiss

■ The Pennsylvania Association of Realtors ("the Realtors") moves to dismiss Brown's Section 1983 claim against them. For the following reasons, the court will grant this motion.

In his Amended Complaint, Brown alleges that he exposed the Bureau's quota system to the Realtors. According to Brown, the Realtors then participated in the decision to terminate him so as to better achieve its political agenda. Specifically, Brown alleges that the Realtors, as a political ally to then-Governor Tom Ridge, declined to confront the Bureau's administration regarding the quota system. Rather, they opted to expose him to the Ridge Administration, which then fired him. Brown contends that the Realtors and then-Governor Ridge and his administration decided to keep Brown's revelations secret so the administration could "flout" its regulatory statistics.

Brown has not alleged, however, that he ever worked for the Realtors, or that he was under its supervision and control. Indeed, his employment with the Bureau placed him in a position of authority over members of the Realtors, such that he was prosecuting its members for alleged violations of Pennsylvania laws governing real estate licenses.

■ Additionally, taking these allegations as true, Brown has failed to demonstrate that the Realtors were acting under color of state law. He himself identifies the Realtors as a private professional association, and not as a subdivision or agency affiliated with the state government in any manner. Brown is correct that private individuals who conspire with state officials in prohibited action under color of state law may incur Section 1983 liability. *See Gilbert v. Feld,* 788 F.Supp. 854, 860 (E.D.Pa.1992). However, he has failed to adequately allege such a conspiracy here. Indeed, only allegations of conspiracy that are particularized, such as those addressing the period of the conspiracy and actions of the alleged conspirators in furtherance of the conspiracy, will be deemed sufficient. *See Young v. Kann,* 926 F.2d 1396, 1405 (3d Cir.1991). Brown has, therefore, failed to state a claim against the Realtors.

## F. Grigsby's Motion to Disqualify

The Commonwealth defendants are represented by the law firm of Hamburg & Golden, P.C. Grigsby has now moved to disqualify this firm. For the following reasons, the court will deny this motion.

In her motion to disqualify, Grigsby alleges that she sought representation by the Commonwealth's counsel, Neil Hamburg ("Hamburg") of Hamburg & Golden, P.C., in October 1998. She further alleges that she imparted "confidential information" to Hamburg and that she also discussed her negotiation strategies with him. During this conversation, Hamburg declined the representation because his firm has represented the Commonwealth in other matters since 1997. He claims he was only told Grigsby's name, that the matter involved a racial discrimination suit, and that Grigsby's employer was the Commonwealth of Pennsylvania.

In April 2000, Grigsby sent Hamburg a letter requesting that his firm withdraw because of the October 1998 consultation. Hamburg responded that his firm would not withdraw because: (1) she was never a client of his firm; (2) no confidential information had been imparted; and (3) he had advised her that he represented the Commonwealth during their initial conversation.

Grigsby and Hamburg spoke again by telephone on March 28, 2000. In that conversation, which was initiated by Grigsby, she inquired about the possibility of settlement. Hamburg informed her that his client had no interest in settlement. She then inquired as to whether Hamburg recalled the October 1998 conversation. Hamburg said he did recall speaking with her at that time.

While Grigsby has lodged serious allegations against Hamburg and his law firm, she has failed to provide an affidavit, or any other evidence, in support of her conclusory allegations. Thus, as Grigsby has failed to raise even the slightest issue with regard to Hamburg's ethical duties, the court is constrained to deny her motion to disqualify.

## G. Failure to Prosecute

By order dated February 28, 2003, the court requested that counsel for all parties confer and submit a list of motions which remain ripe for decision. Despite defense counsel's good faith efforts to contact Grigsby using the contact information she had provided, they were unable to contact her. Thus, the defendants submitted a status report without her input.

The court has likewise been unable to contact Grigsby, as her contact information is apparently outdated. Nor has Grigsby herself contacted the court in response to its February 28, 2003 order, or otherwise.

Thus, the court orders Grigsby to submit to the court, in writing, her updated contact information within ten days from the date of this order. Should she fail to comply with this order, the court will dismiss her case for failure to prosecute, without further notice.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Jeffrey Brown's Motion to Sever (D.I. 6) is GRANTED for purposes of dispositive motion practice and trial only;

2. The Commonwealth Defendants' Motions to Dismiss (D.I. 22 and D.I. 44) are GRANTED in part, and DENIED in part;

3. Legal Aid of Chester County's Motion to Dismiss (D.I. 49) is GRANTED;

4. Carolyn E. Johnson's Motion to Dismiss (D.I. 47) is GRANTED;

5. Robert F. Adam's Motion to Dismiss (D.I. 48) is GRANTED;

6. David Deardon's Motion to Dismiss (D.I. 67) is GRANTED;

7. The Pennsylvania Association of Realtor's Motion to Dismiss (D.I. 20) is GRANTED;

8. Karen Grigsby's Motion to Disqualify Hamburg and Golden, P.C. (D.I. 15) is DENIED;

9. The Commonwealth Defendants' Motion to File Brief in Excess of 15 Pages (D.I. 25) is declared MOOT;

10. Brown's Motion for a 20-Day Enlargement of Time (D.I. 31) is declared MOOT;

11. Deardon's Motion to Extend Time to Answer Second Amended Complaint (D.I. 59) is declared MOOT;

12. Brown's Motion to Enlarge Time and for a Case Management Conference (D.I. 74) is declared MOOT;

13. Dr. X's Motion to Intervene (D.I. 70) is declared MOOT; and

14. Karen Grigsby shall contact the court, in writing, within ten (10) days from the date of this order by providing her current contact information. Should she fail to comply with this order, the court will dismiss the remainder of her case for failure to prosecute, without further notice.