Michael R. BOYKIN, et al., Plaintiffs

v.

**BLOOMSBURG UNIVERSITY OF PENNSYLVANIA, et al., Defendants**

No. 4:CV–94–306.

United States District Court, M.D. Pennsylvania.

July 7, 1995.

Robert S. Mirin, Harrisburg, PA, for plaintiffs.

R. Douglas Sherman, Atty. Gens. Office, Harrisburg, PA, for defendants Dr. Harry Ausprich, Lt. Deborah Barnes, University of Bloomsburg, Charles Confer, Timothy Downs, Dr. Curtis English, Margaret Manning, Dr. Robert Parrish, Sallie Samsel, John Walker and Irvin Wright.

Sarah M. Bricknell, Buchanon Ingersoll, P.C., Harrisburg, PA, for defendant Virginia McAfee.

Sean P. McDonough, Dougherty, Leventhal & Price, Scranton, PA, for defendant William Kreisher.

Samuel E. Klein, Jacquelyn J. Fatula, Dechert, Price & Rhoads, Philadelphia, PA, for defendants Press Enterprise, Inc., and Paul Eyerly, III, Publisher of Press Enterprise.

*OPINION*

MUIR, District Judge.

### I. Introduction and Background.

This order relates only to Defendant Virginia McAfee, a clerk-typist employed by Bloomsburg University.

On March 2, 1994, Plaintiffs Michael R. Boykin, Margaret L. Boykin, and Aaron M. Boykin filed a complaint in this Court against several Defendants. On May 9, 1994, the Boykins filed a virtually identical complaint based upon the same facts in the Court of Common Pleas of Columbia County, Pennsylvania, which was removed to this Court on May 31, 1994. The two cases were consolidated on June 15, 1994.

On February 1, 1995, McAfee filed a motion for summary judgment, a brief in support thereof, a statement of material facts, and other documents in support of her motion.

On February 22, 1995, we issued an order in which we granted the Boykins' motion for a substantial extension of time, until March 24, 1995, to respond to McAfee's motion for summary judgment as well as other motions for summary judgment filed by other Defendants in this case. The Boykins subsequently obtained an additional 3-week enlargement of time to respond to the McAfee's motion for summary judgment as a result of a then pending motion for disqualification of the undersigned judge filed in this case. Similarly, in order No. 2 of April 19, 1995, we reluctantly allowed the Boykins an additional 15 days to respond to McAfee's motion for summary judgment. In our order of April 19, 1995, we stated that "[t]he Boykins shall receive no further extensions of time absent exigent circumstances." In Order No. 3 of May 3, 1995, we allowed the Boykins an additional extension of time within which to respond to McAfee's motion for summary judgment. Furthermore, on May 10, 1995, we granted the Boykins' "Emergency Motion For Brief Extension Of Time," until May 18, 1995, within which to file a response to McAfee's motion for summary judgment.

On May 18, 1995, the Boykins finally filed a brief in opposition to McAfee's motion for summary judgment and a so-called response to McAfee's statement of material facts. The Boykins also filed individual declarations of Michael Boykin, Margaret Boykin, Howard B. Johnson, and George Mitchell as well as a binder of documents comprised of miscellaneous documents following a declaration of George Mitchell with the caption on it of the case of Mitchell vs. Bloomsburg University, et al., 93–1870 (M.D.Pa.) (McClure, J.).

The individual declarations of Michael Boykin, Margaret Boykin, and George Mitchell were defective because they were not sworn to and were unsigned.

On May 22, 1995, we issued an order in which we deemed withdrawn pursuant to Local Rule 7.5 the Boykins' "Motion To Supplement Record" because they had failed to file a brief in support of their motion.

On May 26, 1995, the Boykins filed a "Motion To Lodge Documents." In this motion, the Boykins requested leave to file corrected declarations as well as additional documents in opposition to the Defendants' motions for summary judgment. Along with the motion, the Boykins filed corrected declarations of Michael Boykin, Margaret Boykin, George Mitchell, and Howard Johnson. In additional to the declarations, the Boykins also filed two volumes of other documents which were not included in their original responses. Volume I is comprised largely of transcripts relating to the criminal proceedings against Michael Boykin from late 1992 and 1993. Volume II contains nothing but 1992 and 1993 newspaper articles and a portion of one transcript from the 1993 trial of Michael Boykin.

In Order No. 1 of May 30, 1995, we required the parties to brief the issue raised in the Boykins' motion to lodge documents. On June 5, 1995, the Boykins filed a brief in support of their motion to lodge documents. On June 5, 1995, McAfee filed a reply brief in support of her motion for summary judgment. On June 7, 1995, the Commonwealth Defendants filed a brief in opposition to the Boykins' motion to lodge documents. On June 12, 1995, we denied the Boykins' emergency motion filed on the date their reply brief was due for an extension of time within which to file a reply brief. On June 13, 1995,

we issued an order in which we granted the Boykins' motion to lodge documents. Therefore, McAfee's motion for summary judgment became ripe for disposition on June 13, 1995.

The individual declarations of Michael Boykin, Margaret Boykin, and George Mitchell are based largely on speculation, hearsay, and otherwise inadmissible opinion. The declaration of George Mitchell largely does not even concern the Boykins. Where it does, it expresses Mitchell's opinions and speculation and fails adequately to provide a foundation for a number of his assertions. Moreover, George Mitchell's declaration does not even address the issues raised in this case. The individual declaration of Howard Johnson suffers from similar deficiencies and also bears no relation to the issues raised in this case.

On February 1, 1995, McAfee filed a statement of material facts in accordance with Local Rule 7.4. The Boykins' response to McAfee's statement of material facts is hopelessly defective. This Court's orders of April 19, 1995, May 3, 1995, and May 10, 1995, granting the Boykins' last three motions for extensions of time, each provided that the Boykins' response to the Defendants' statements of material facts comply strictly with Local Rule 7.4.

Local Rule 7.4 provides:

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

■ This Rule furthers the purpose of the summary judgment process in identifying material facts generally in dispute for which a trial is necessary. A non-moving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings. The failure of the non-moving party to produce such affirmative evidence to create issues in dispute material to the claims presented will result in the grant of judgment in favor of the moving party. *See Hankins v. Temple University,* 829 F.2d 437, 440 (3d Cir.1987).

■ The Court of Appeals for the Third Circuit has held that the non-moving party is obligated under these rules to identify those facts of record which would contradict the facts identified by the movant. A district court judge is not required to search through the record for facts which might support the Respondents' claim. Allowing the non-moving party to rely on denials of those facts by referring to unidentified evidence provides an unworkable and illogical approach contravening the directive of Rule 56(e) requiring the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Childers v. Joseph,* 842 F.2d 689 (3d Cir.1988).

Despite these requirements, the Boykins' statement of material facts is largely unresponsive to McAfee's statement, provides additional irrelevant information, and routinely fails to provide any citation to the record for any of the facts they do allege. Moreover, the Boykins do not provide affirmative evidence to support their contentions. The Boykins' response is filled with unsupported speculation and hearsay. As a result, the Boykins should be deemed to have admitted all of McAfee's material facts. To adopt any other approach places an undue burden on the Court and defense counsel to examine each page of the Boykins' documentation in order to determine whether the Boykins have created any dispute as to any material facts. This function and duty is one which the Boykins' counsel is obligated to fulfill.

Nevertheless, to the extent practicable, we did attempt to discern the Boykins' response to McAfee's statement of material facts as well as search the record for facts which might support the Boykins' claims.

## II. Facts Which Are Generally Not in Dispute.

1. In 1991, the administration of Bloomsburg University (the "University") autho-

rized a search for a new Director of University police.

2. The search process resulted in Margaret Boykin, an African–American individual from Chicago with a variety of police work experience, being offered the job.

3. As part of the job offer, the University said that it would make every effort to place Ms. Boykin's husband, Michael Boykin, also an African–American, in a position at the University.

4. Margaret Boykin accepted the job beginning November 2, 1992.

5. Michael Boykin accepted a position as a grounds crew worker at the University, beginning on November 3, 1992, without having to engage in any competitive process for the position.

6. Defendant Virginia McAfee, who is an African–American, is employed by the University as a clerk-typist, and was employed in that position when the Boykins began their employment at the University.

7. Prior to being a clerk, McAfee had been employed by the University on the grounds crew.

8. On Friday, December 18, 1992, the grounds crew held a Christmas party in the grounds crew trailer to which McAfee was invited by a telephone call to her office that afternoon by Shawn Makar, a member of the grounds crew.

9. McAfee advised Makar that she would need a ride to the grounds crew trailer for the party, and Makar picked McAfee up at her office at around 3:00 p.m. that day.

10. Makar brought Michael Boykin, who had been at the party, with him to pick up McAfee and bring her back to the party. The three of them then drove back to the grounds crew trailer together.

11. Within half an hour after the three of them arrived at the party, everyone had left except for Michael Boykin, Ray Cox and Virginia McAfee, and at some point after that Ray Cox also left.

12. Soon after Cox left, McAfee decided that she also wanted to leave.

13. McAfee went out to the truck in which she had ridden to the party and got in on the passenger's side.

14. McAfee claims that Michael Boykin followed her into the truck on the passenger's side, assaulted and raped her, and ripped her clothes in the process.

15. McAfee then got away from Michael Boykin, ran back into the grounds crew trailer and telephoned Frank Curran, the grounds crew supervisor.

16. Boykin followed McAfee into the trailer, but left when he realized that she was on the phone.

17. Soon after Boykin left, McAfee's boyfriend, David Fenton, arrived. He found McAfee very distraught and disheveled, got very angry, and threw some things around in the trailer. He then went outside and flagged down University Police Officer Jack Pollard.

18. Curran and University Police Officers Daniel Pitonyak and Deborah Barnes arrived shortly after Pollard.

19. Curran told Barnes that he had received a telephone call at home from McAfee, that McAfee said she was in trouble and needed help, and that it was Mike.

20. McAfee stated to Barnes that she did not want to go to the hospital, and she did not want to call the Women's Center.

21. Before McAfee left the trailer at about 10:30 p.m., Barnes gave McAfee her card with her office and home phone numbers in case McAfee was able to talk later. McAfee gave Barnes her phone number so that Barnes could check on her the following morning. McAfee called the Women's Center after she got home but she could not remember everything that had happened.

22. At about 11:00 p.m. University Police decided to call Vice President Robert Parrish to discuss the situation.

23. Barnes had reported to Parrish on a regular basis when she was acting Chief of Police while the search for a new Chief was proceeding. Barnes decided to defer to Parrish as to whom she should call next.

24. Parrish arrived at the University Police Department at about 11:40 p.m. and was apprised of the situation.

25. Parrish and Barnes conferred again at 10:00 a.m. the next morning, December 19, 1992, briefly discussed handing the investigation over to the State Police to avoid potential conflicts, and then decided to discuss the matter with the Boykins first.

26. At 10:45 a.m. Barnes telephoned McAfee. McAfee said that she could not stop thinking about the incident and wanted to do the right thing, but that she was embarrassed. Barnes told McAfee that Parrish had been apprised of the situation, assured her that the University would try to protect her from public embarrassment, and gave McAfee her telephone numbers again.

27. Barnes then again spoke to Parrish who advised Barnes that he had spoken to Michael Boykin about the previous night's events.

28. At about 11:30 a.m. Barnes telephoned McAfee again to ask her to place her clothes from the evening before in a brown paper bag and seal it with tape, which McAfee did.

29. The next day, Sunday, December 20, 1992, McAfee called University Police and left a message for Barnes to call her. Barnes returned the call that afternoon. McAfee had a lot of questions, so Barnes agreed to go over to McAfee's house.

30. McAfee expressed concern that the matter be kept confidential. McAfee was afraid that the incident would be ignored because Michael Boykin's wife was the Chief of University Police, and McAfee was afraid that she would not be safe.

31. McAfee went over the events of December 18, 1992, again, but McAfee still could not remember everything.

32. McAfee gave Barnes the brown bag with her clothes from that night. After Barnes left McAfee's home she placed the bag in a locker where she believed it would be secure.

33. On Monday, December 21, 1992, McAfee met with Barnes and Parrish. McAfee related the same account of events to Parrish that she had told Barnes. McAfee still could not remember everything that had happened that night.

34. Later that day McAfee called Barnes again for further assurance that the matter would be kept confidential. Barnes asked McAfee if she would be willing to discuss the matter with the State Police and McAfee said she would.

35. Parrish then directed Barnes to turn the investigation and evidence over to the State Police. This was done at about 2:30 p.m. that day.

36. The sole reason investigation into the matter continued was to determine whether in fact criminal conduct had occurred. Although McAfee was not specific at the onset of the investigation about what had happened, it was clear to Barnes, because of McAfee's actions and demeanor, that some kind of assaultive behavior had occurred. Because of her training, Barnes knew that it was not at all unusual for a victim of an assault, particularly a sexual assault, to try to deny that the event had taken place, or to try to block it from her mind. Based on McAfee's statements, appearance, and actions, Barnes thought that this may well be the case in McAfee's situation.

37. On Tuesday afternoon, December 22, 1992, McAfee went to the State Police Barracks in Bloomsburg to give the State Police her statement. She was questioned by Troopers Steven Barilar and Thomas Lazicki. Barnes was also present. McAfee told them everything that she could remember about the night of the party.

38. In an attempt to facilitate McAfee's recollection of the events of that night, McAfee attended two hypnosis sessions. The first was on December 27, 1992, and was attended by Barnes and Lazicki. The second was on January 7, 1993, and was attended by Lazicki.

39. McAfee kept in touch with Barnes even after the investigation was turned over to the State Police because McAfee was comfortable talking to her.

40. No one involved in the investigation of the events of the night of the party indi-

cated to McAfee or to anyone in her presence that the investigation or the way it was being conducted had anything to do with Michael Boykin's race.

41. No suggestion or direction was ever made to McAfee by anyone regarding the contents of her testimony at the preliminary hearing or the trial relating to the events of that night. McAfee was encouraged only to testify to what she could remember and that is what she did.

42. To the best of Parrish's knowledge, all information conveyed to him by others concerning the events following the ground crew party was true and accurate. He had no reason to disbelieve any information provided to him by Barnes, other police officers, or McAfee. Parrish never encouraged McAfee to pursue false criminal charges against Michael Boykin nor did he believe that she was doing so. Parrish also had no reason to believe that Barnes did anything improper in the performance of her duties for the University Police Department.

43. From December 21, 1992 onward, the investigation of any criminal conduct committed by Michael Boykin was handled by the Pennsylvania State Police.

44. As of December 21, 1992, the direction of the investigation and subsequent prosecution and trial of Michael Boykin was completely beyond the control of Parrish, Barnes or McAfee.

### III. Discussion.

Summary judgment is appropriate only when there is no genuine issue of material fact which is unresolved and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is an extreme remedy and should not be granted when there is a disagreement about the facts or the proper inferences which a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982). "When a motion for summary judgment is made and supported as provided in ... [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading...." Fed.R.Civ.P. 56(e). The adverse party must show by affidavits, plead-

ings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. *Id.* Because summary judgment is a severe remedy, the Court should resolve any doubt about the existence of genuine issues of fact against the moving party. *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981).

The United States Supreme Court has stated that in motions for summary judgment a material fact is one which might affect the outcome of the suit under relevant substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Supreme Court also stated in *Anderson* that a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325, 106 S.Ct. at 2553–54. The non-moving party then must make a sufficient showing as to the essential elements of his or her case that a reasonable jury could find in his or her favor. *Id.* at 322–23, 106 S.Ct. at 2552–53.

In light of these principles, we will now address McAfee's motion for summary judgment.

In her motion for summary judgment, McAfee alleges that there is no genuine issue as to any material fact and she is entitled to summary judgment as a matter of law on Counts I through X of the Boykins' complaint.

On November 23, 1992, Michael Boykin was hired as a grounds crew employee for Bloomsburg University of Pennsylvania. He was suspended from that position on December 22, 1992, following events stemming from a December 18, 1992, Christmas party. Virginia McAfee, a co-worker who attended the Christmas party with Michael Boykin, accused him of raping her in a university truck in a parking lot adjacent to the party. Michael Boykin was subsequently arrested on January 11, 1993, and charged with rape, aggravated indecent assault, simple assault, and criminal intent to commit rape.

Prior to Michael Boykin's arrest, a number of rapes had occurred in Bloomsburg. Michael Boykin alleges that agents for Bloomsburg University, agents for Bloomsburg City Police, William First, Esq., District Attorney of Columbia County, Pennsylvania, and a number of Pennsylvania State Police Troopers negligently, recklessly, and falsely convened a press conference identifying Michael Boykin as the "serial rapist" of Bloomsburg. Michael Boykin was acquitted of all charges stemming from the December 18, 1992, Christmas party.

The Boykins' claims arise from the arrest and trial of Michael Boykin on the rape charges, his suspension from employment with Bloomsburg University and the surrounding publicity.

We will now address Count I of the Boykins' complaint. Count I of the Boykins' complaint alleges that they were deprived of their right of full and equal benefit of all laws and proceedings for the security of persons and property in violation of 42 U.S.C. § 1981(a) through (c).

42 U.S.C. § 1981 forbids intentional discrimination based upon race in the making and enforcement of contracts. *Rogers v. Mount Union Borough by Zook,* 816 F.Supp. 308, 312 (M.D.Pa.1993) (Caldwell, J.). The term "make and enforce contracts" primarily includes the making, performance, modification, and termination of contracts. *Id.* However, § 1981 can encompass other broader conduct based upon racial discrimination. *Grier By Grier v. Galinac,* 740 F.Supp. 338, 342 (M.D.Pa.1990) (Caldwell, J.).

Liability under § 1981 is personal in nature, much like under § 1983, and cannot be imposed vicariously. Because liability is premised upon intentional discrimination, personal involvement of a defendant is essential. *See Jett v. Dallas Independent School District,* 491 U.S. 701, 735, 109 S.Ct. 2702, 2722–23, 105 L.Ed.2d 598 (1989); *See also, General Building Contractors Association, Inc. v. Pennsylvania,* 458 U.S. 375, 392–397, 102 S.Ct. 3141, 3150–54, 73 L.Ed.2d 835 (1982). Conclusory allegations of generalized racial bias do not establish discriminatory intent. *Flagg v. Control Data,* 806 F.Supp. 1218, 1223 (E.D.Pa.1992) (Katz, J.).

The Boykins have presented nothing more than conclusory allegations that the race of Michael Boykin played a part in McAfee's conduct. There is simply no evidence that the race of Michael Boykin was a factor in the conduct of McAfee. Indeed, Michael Boykin admitted in his deposition that he had no reason to believe that any of McAfee's actions were racially motivated. We are of the view that McAfee is entitled to summary judgment on Count I of the Boykins' complaint.

We will now address Count II of the Boykins' complaint. In Count II the Boykins contend that the Defendants' conduct constituted ongoing state action, a conspiracy, and a repeated course of state action under statute, ordinance, regulation, custom, or usage of the Commonwealth of Pennsylvania. This conduct allegedly caused the Boykins to suffer loss of rights established under the Constitution, including the rights to due process and equal protection in violation of 42 U.S.C. § 1983.

Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of a federally protected right. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981).

The Boykins have failed to present a viable § 1983 claim against McAfee. There is no allegation that McAfee was acting other than as a private citizen in reporting Michael Boykin's alleged criminal conduct. Not every action taken by a state employee is deemed to have occurred under color of state law. Action is "under color of state law" only when the alleged wrongdoer is acting by virtue of his state authority. *Hughes v. Meyer,* 880 F.2d 967, 971 (7th Cir.1989).

The Court of Appeals for the Third Circuit has held that liability cannot be imposed for damage caused by a private citizen or a public official exercising the right to report to an appropriate agency what he or she believed to be improper conduct inducing legislative, administrative, or judicial action. *See Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 159–160 (3d Cir.1988).

The furnishing of information by McAfee to the proper authorities concerning Michael Boykin's alleged criminal conduct was the act of a private individual and not that of a state actor. *See Hughes,* 880 F.2d at 972.

While it is true that a private party sometimes may be liable for a § 1983 violation, this is only where it can be shown that the private party was involved in a conspiracy with one or more state officials to deprive an individual of his constitutional rights. *Adickes vs. S.H. Kress Company,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

In their complaint, the Boykins allege that McAfee conspired with state actors to bring false criminal charges against Michael Boykin and that she testified falsely at the criminal trial of Michael Boykin. However, the Boykins have produced no evidence that McAfee conspired with any of the other Defendants in this case to deprive the Boykins of their constitutional rights. The Boykins must allege specific facts that the Defendants reached an understanding or agreement to violate the Boykins' constitutional rights. *Ersek v. Township of Springfield, Delaware County,* 822 F.Supp. 218, 223 (E.D.Pa.1993) (Ditter, J.). The Boykins have asserted nothing beyond mere conjecture and speculation that such a conspiracy existed.

Paragraph 63 of the Boykins' complaint alleges that McAfee has shown a propensity to make false statements. However, whether or not McAfee made false charges against Michael Boykin is not material to the Boykins' § 1983 claim. Providing false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983. *Butler v. Goldblatt Brothers, Inc.,* 589 F.2d 323, 326–27 (7th Cir.1978), *cert. denied,* 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979); *Arnold v. International Business Machines,* 637 F.2d 1350, 1357–58 (9th Cir.1981). In addition, as a witness in a criminal matter, McAfee is entitled to witness immunity, and may not be sued for damages under the federal civil rights laws. *Briscoe v. LaHue,* 460 U.S. 325, 329–30, 103 S.Ct. 1108, 1112–13, 75 L.Ed.2d 96 (1983).

In any event, even if the Boykins could prove that McAfee made false statements to the state actors investigating the case, that is not enough to prove the existence of a conspiracy for purposes of § 1983. As stated earlier, the Boykins must prove that the alleged conspirators knew that the accusations were false, and proceeded to bring charges against Michael Boykin anyway. *See Mark v. Furay,* 769 F.2d 1266, 1273–74 (7th Cir.1985). The Boykins have presented no evidence to that effect. We will grant summary judgment on Count II as to McAfee.

We will now address Count III of the Boykins' complaint. Count III alleges a violation of 42 U.S.C. § 1985 by the Defendants' participation in a conspiracy that hindered the due course of justice and was calculated to deny Michael Boykin equal protection because of his race. Count III also alleges that the Defendants knew of the aforementioned violations and neglected to prevent them, in violation of 42 U.S.C. § 1986.

42 U.S.C. § 1985 prohibits public and private conspiracies which deprive persons of constitutionally protected rights. *Rogers v. Mount Union Borough by Zook,*

816 F.Supp. 308, 314 (M.D.Pa.1993) (Caldwell, J.).

■ Section 1986 allows a cause of action against the party who had knowledge of a § 1985 conspiracy, had the power to prevent it, and then failed to do so. Therefore, transgressions of § 1986 by definition depend upon a preexisting violation of § 1985. *Rogin v. Bensalem Township,* 616 F.2d 680, 696 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Mere conclusory allegations that a conspiracy existed will not survive a motion to dismiss. *Id.*

■ The Boykins have presented no evidence to support their claim that a conspiracy existed to deprive them of their civil rights. Rather, only suspicions, speculation, and feelings support their claim of conspiracy. This simply is not sufficient. We will grant summary judgment on Count III of the Boykins' complaint as to McAfee.

We will now address Counts IV and V of the Boykins' complaint. Count IV contends that the Defendants unlawfully discriminated against Michael Boykin because of his race and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. Count V alleges a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq., on the basis of race and sex.

Michael Boykin filed a complaint with the Pennsylvania Human Relations Commission on June 16, 1993, under No. E–65226D. This complaint was crossfiled with the Equal Employment Opportunity Commission at No. 17F–933161. Michael Boykin then filed an amended complaint on July 19, 1993, which superseded his first one. Michael Boykin later withdrew the Pennsylvania Human Relations Commission charge and allowed the Equal Employment Opportunity Commission charge to continue. Michael Boykin subsequently received a right to sue letter from the Equal Employment Opportunity Commission on charge No. 17F–933161.

The charge contained within the amended complaint alleges that Michael Boykin was discriminated against based on his race when he was suspended and subjected to unequal conditions of employment on December 22, 1992.

■ Title VII prohibits an employer from discriminating against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. *See* 42 U.S.C. § 2000e–2. As set forth in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. [citations omitted].

*Id.* at 252–253, 101 S.Ct. at 1093. Proof of discriminatory motive is critical. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The Boykins bear the burden of establishing that the Defendants' actions were motivated by race. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, —— – ——, 113 S.Ct. 2742, 2747–9, 125 L.Ed.2d 407 (1993). Title VII does not protect employees from unfair employment actions but only from employment actions motivated by the person's race or other protected status. *See Dodge v. Susquehanna University,* 796 F.Supp. 829, 836 (M.D.Pa.1992) (McClure, J.).

■ First, Title VII only applies to the actions of an employer. McAfee was not Michael Boykin's employer. Rather, she was a clerical worker employed by Bloomsburg University. It is inconceivable within the framework of Title VII that a claim of this sort can be brought based upon McAfee's conduct.

Moreover, the Boykins have presented no evidence that any action was taken by McAfee which would implicate racial discrimina-

tion. Rather, the Boykins only set forth speculative allegations and no facts upon which racial discrimination by McAfee can be made. We will grant summary judgment on Count IV of the Boykins' complaint as to McAfee.

We will now address the Boykins' claim under the Pennsylvania Human Relations Act. This claim, as with the Title VII claim, is totally without merit as McAfee was not an employer of either of the Boykins. In addition, Michael Boykin did not receive a right to sue letter as contemplated by the Pennsylvania Human Relations Act. Rather, Michael Boykin withdrew his charge under the Pennsylvania Human Relations Act and therefore abandoned any right to pursue that claim. Therefore, we will grant summary judgment on Count V as to McAfee.

We will now address Count X of the Boykins' complaint. Count X of the Boykins' complaint alleges violations of the Boykins' first, fourth, fifth, and fourteenth amendment rights under the United States Constitution. Count X is directed towards the individual State Police Defendants who were previously dismissed from this case. Count X was added to the complaint when the Boykins filed a second complaint which named the individual state police officers previously identified as John Doe State Police Officers in their original complaint. Although Count X is not applicable to McAfee, we will address it anyway because the Boykins' pleading deficiencies result in general allegations of constitutional violations against all Defendants.

As previously discussed in this order, the actions of McAfee did not violate any constitutional right of the Boykins. We are of the view that the facts in this case fail to establish any cause of action against McAfee under the United States Constitution. We will grant McAfee's motion for summary judgment on Count X as well.

■ Furthermore, only persons actually deprived of their civil rights can redress such rights in a civil rights action. *See O'Malley v. Brierley,* 477 F.2d 785, 789 (3d Cir.1973). The Boykins have presented no evidence that McAfee took any action against either Margaret Boykin or Aaron Boykin. Thus, there is no basis for a cause of action by either Margaret Boykin or Aaron Boykin.

We will now address the Boykins' claims under state tort law. Counts VI through IX allege state tort actions brought pursuant to this Court's pendent jurisdiction. The Boykins allege claims of false imprisonment, defamation, invasion of privacy, and malicious prosecution. Counts I–IV and Count X of the Boykins' complaint are the only bases for federal subject matter jurisdiction. Because we are granting McAfee's motion for summary judgment as to the federal claims asserted in the Boykins' complaint, we will remand the pendent state claims to the Court of Common Pleas of Columbia County. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

We will defer the entry of judgment by the Clerk so as not to prejudice any person or persons who may wish to file an ancillary motion or motions prior to entry of judgment.