Carmen M. PEREZ RIVERA and Carlos
Chinea Diaz, Plaintiffs,

v.

The HERTZ CORPORATION, Defendant.

No. 96 Civ. 4230(BSJ).

United States District Court,
S.D. New York.

Sept. 11, 1997.

Auster & Arisohn, White Plains, NY, for Plaintiffs.

Bleakly Platt & Schmidt, White Plains, NY, for Defendant.

## MEMORANDUM & ORDER

JONES, District Judge.

In this civil rights action, plaintiffs Carmen M. Perez Rivera ("Perez") and her husband Carlos Chinea Diaz ("Chinea"), both of whom hail from Puerto Rico, allege that defendant, the Hertz Corporation ("Hertz"), refused to rent them a car based on their national origin, forcing them to use another rental agency.

Plaintiffs sue pursuant to 42 U.S.C. § 1981, New York State's Executive Law § 290 *et seq.* (codified as the "New York Human Rights Law" or the "NYHRL"), New York State's Civil Rights Law §§ 40 & 41, breach of contract, and intentional and negligent infliction of emotional distress.

Pending is defendant's motion pursuant to Fed.R.Civ.P. 56 for summary judgment on all claims.

Summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. To grant a motion for summary judgment, the Court must determine that a reasonable fact finder could not find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the moving party bears the burden of proving the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If

the moving party meets this burden, the burden shifts to the non-moving party to present evidence of specific facts showing that a genuine issue exists. *Anderson*, 477 U.S at 256.

■ Since intent is in dispute in this discrimination case, the Court treats this summary judgment motion with special caution. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (explaining that direct evidence of intent is "rarely found" in discrimination context).

■ The threshold issue here is whether Perez has standing to bring this case. Defendant argues that Hertz rejected Chinea's efforts to rent a car, not those of Perez, and that therefore Perez has no claim here. *See Boykin v. Bloomsburg Univ. of Penn., Inc.*, 893 F.Supp. 409, 419 (M.D.Pa.1995) ("[O]nly persons actually deprived of their civil rights can redress such rights in a civil rights action."), *aff'd*, 91 F.3d 122 (3d Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 739, 136 L.Ed.2d 678 (1997). Perez, however, has presented evidence suggesting that she, herself, was prevented from renting a Hertz car. Specifically, there is evidence demonstrating that after Hertz rejected her husband's attempt to rent, Perez showed a Hertz rental agent her license in an attempt to secure a car. Additionally, Perez claims that a Hertz manager and supervisor, Eugene Ceriello ("Ceriello"), told *her* that Hertz would not rent to her family because they were Puerto Rican. Such actions prevented Perez from completing Hertz' application process, thereby precluding her from completing a contract

to rent; as such, they give her standing to complain that her civil rights were violated and that Hertz breached any contract it might have had with her regarding the desired rental car.[1]

The Court proceeds to discuss each of plaintiffs' claims.

### 1. *Section 1981 and The New York Executive Law*

Plaintiffs claim that defendant violated 42 U.S.C. § 1981 and N.Y. Exec. Law § 290 *et seq.* (codified as the "New York Human Rights Law" or the "NYHRL").

The standards governing claims pursuant to section 1981 and the NYHRL are identical. *Ayton v. Lenox Hill Hosp.*, 93 Civ. 6601, 1997 WL 10000, at 1–2 & n. 1 (S.D.N.Y. Jan. 10, 1997) (citing *Tomka v. Seiler*, 66 F.3d 1295, 1304 n. 4 (2d Cir.1995)).

■ These standards prohibit discrimination based on race by both public and private entities. *See Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir.1988) (stating that section 1981 does not require "state action").[2]

■ To establish a claim under section 1981 or the NYHRL, plaintiffs must prove that (1) they are members of a racial minority, (2) the defendant intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute, which include making and enforcing contracts. *Mian v. Donaldson. Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir .1993), *cert. denied*, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). With regard to the intent element, plaintiff must show that defendant's actions

---

**1.** *Black Faculty Ass'n v. San Diego Community College District*, 664 F.2d 1153 (9th Cir.1981), on which the defendant places great reliance, supports this conclusion. In that case, a college professor sought to sue his employer for discriminatory hiring and promotion practices. The Court denied him standing because he had not suffered the requisite injury; he was hired and had not even applied for a promotion, let alone been denied one. 664 F.2d at 1156. Additionally, in rendering its decision the court specifically recognized that "an individual need not always file and perfect an application ... to have standing to complain" of discrimination. *Id.* at 1156 and n. 2 (citing *Tagupa v. Bd. of Directors*, 633 F.2d 1309, 1311 (9th Cir.1980) and noting that

the plaintiff in *Tagupa* "filed an application, albeit incomplete" and thus established the necessary "type of interest" to have standing).

**2.** Although litigation under section 1981 most often involves the right to make and to enforce employment contracts, *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), cases involving refusal to sell and to provide service are appropriate. *E.g., Washington v. Duty Free Shoppers, Ltd.*, 710 F.Supp. 1288 (N.D.Cal.1988); *Shen v. A&P Food Stores*, 93 Civ. 1184, 1995 WL 728416 (E.D.N.Y. Nov.21, 1995).

were purposefully discriminatory and racially motivated. *See Carovano,* 851 F.2d at 571.

The burdens of proof and persuasion applicable in a Title VII action apply. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186–188, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Ramos v. City of New York,* 96 Civ. 3787, 1997 WL 410493, at 4–5 (S.D.N.Y. July 22, 1997).[3]

Applying these standards, it is clear that plaintiffs have met their burden with regard to the first and third elements required. As Puerto Ricans, plaintiffs are minorities within the meaning of the statutes. *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir. 1987). Additionally, they have demonstrated that the activity at issue concerned the ability to contract with the defendant. *See Shen v. A&P Food Stores,* 93 CV 1184, 1995 WL 728416 (E.D.N.Y. Nov. 21, 1995) (refusal to sell groceries).

This Court finds that plaintiffs have also met their burden on the intent element.

 First, plaintiffs set forth their *prima facie* case by presenting evidence showing that a Hertz manager said that Hertz would not rent to them because they were Puerto Ricans. According to plaintiffs, Ceriello told them that Hertz would not rent to Puerto Ricans because of a suspicion that they, as a group, used false forms of identification.[4]

Second, plaintiffs produced evidence showing that defendant's articulated reasons for denying the rental are pretextual.

In this connection, defendant makes two arguments. First, Hertz contends that it denied plaintiffs a rental car because they "did not qualify to rent a car under Hertz policies and procedures." (Def.'s Mem. in Supp., dated Feb. 18, 1997, at 13.) These procedures require Hertz personnel to confirm the validity of any potential customer's driver's license before renting a car to that person. In order to accomplish this, Hertz provides its employees with the "I.D. Checking Guide" (the "Guide"), which pictures authentic licenses from all United States jurisdictions, including Puerto Rico. It is undisputed that the plaintiffs produced licenses that did not match those pictured in the Guide. According to Hertz, its policy instructs its rental agents to refuse to rent to prospective customers who produce licenses not pictured in the Guide.

Second, Hertz contends that the plaintiffs' licenses were "altered." Hertz policy, however, mandates that persons who present such licenses not be allowed to rent or drive one of its vehicles.

There is sufficient evidence, however, to put in issue whether these proffered reasons for denying plaintiffs a rental are pretext for discrimination. First, while the Guide, itself, claims to list "[a]ll valid licenses," a Hertz "Field Bulletin" states that the Guide "can be used for the validation of *U.S. driver's licenses.*" (Emphasis added.) That same bulletin also states that another publication, the "International I.D. Checking Guide," can be used for the validation of licenses for countries outside of the United States and *specifically lists Puerto Rico as a foreign country* (despite its actual status as a commonwealth of this country). (*See* Hertz Field Bulletin, dated April 21, 1995, at 7.) Accordingly, Hertz' own policy bulletin suggests that the Guide should not be relied upon when evaluating the validity of Puerto Rican licenses.[5]

---

3. Neither party argues that this is a "mixed motives" case. *See Sergio de la Cruz v. New York City of Human Resources Administration Dept. of Soc. Servs.,* 82 F.3d 16, 22 (2d Cir.1996) (explaining that plaintiff's burden of proof in a "mixed motive" case is higher than in a "pretext" case) (Title VII case).

4. Defendant's attempt to characterize Ceriello's alleged statement as "isolated" and "nonsensical" and thus insufficient to demonstrate racial animus is unavailing. Ceriello had supervisory authority to allow the plaintiffs to rent a car from Hertz. His alleged statement is therefore direct-

ly relevant to the decision-making process that led to the denial of the rental, which is at issue here. *Cf. Lawson v. Getty Terminals Corp.,* 866 F.Supp. 793, 804 n. 10 (S.D.N.Y.1994) (employment case) (individuals accused of retaliation did *not* have authority to engage in adverse employment actions, and thus their statements, taken alone, were insufficient to establish the requisite intent).

5. Although plaintiffs did not raise this argument, the reason may lie in the fact that plaintiff's copy of the "Field Bulletin" did not include page 7. The defendant, however, did make its copy (in-

Moreover, the same bulletin also instructs Hertz personnel to make an "effort ... with the issuing State's Dept. of Motor Vehicles" to "validate the license[s]" of potential customers unable to prove the validity of their licenses. In this connection, Ceriello admitted that under normal circumstances if a person claims to have a valid driver's license but is unable to produce one, he would "try to call the Department of Motor Vehicle and see if their license is valid."[6] Yet, there is no evidence that any Hertz representative attempted to contact a Puerto Rican authority to ask about the licenses.[7]

Thus, the Court finds that plaintiffs have adduced enough evidence to assert not only a *prima facie* case of discrimination, but also that the proffered reasons for Hertz' actions were not its true reasons; plaintiffs have raised a genuine issue of material fact on the intent issue.

■ Lastly, defendant's conclusory contention that Hertz cannot be held vicariously liable for the actions of Ceriello is without merit. Ceriello was an area manager acting in a supervisory capacity. The evidence shows that he made the ultimate decision to refuse to rent a Hertz car to plaintiffs. These alleged actions establish the personal involvement necessary to hold Hertz liable. *Equal Employment Opportunity Commission v. Gaddis,* 733 F.2d 1373, 1380 (10th Cir.1984); *Flowers v. Crouch–Walker,* 552 F.2d 1277, 1282 (7th Cir.1977); *Negussey v. Syracuse Univ.,* 95 Civ. 1827, 1997 WL 141679, at *4 (N.D.N.Y. March 24, 1997); *Lewis–Kearns v. Mayflower Transit, Inc.,* 932 F.Supp. 1061, 1069 (N.D.Ill.1996); *Alqahtani v. George Washington Univ.,* 95 Civ. 803, 1996 WL 568843, at *3 (D.D.C. March 29, 1996); *Shen v. A&P Food Stores,* 93 CV 1184, 1995 WL 728416, at *3

(E.D.N.Y. Nov. 21, 1995); *Totem Taxi, Inc. v. N.Y.S.H.R. Appeal Bd.,* 65 N.Y.2d 300, 491 N.Y.S.2d 293, 480 N.E.2d 1075 (1985) (under NYHRL, company may be vicariously liable for employee's actions if company encouraged, condoned, approved of, or acquiesced in such conduct).

### 2. *New York Civil Rights Law § 40–d*

■ Defendant argues that plaintiffs' claim pursuant to N.Y. Civil Rights Law § 40–c must be dismissed because plaintiffs did not *plead* that they met the statutory requirements of notice imposed by N.Y. Civil Rights Law § 40–d.

It is undisputed that the plaintiffs actually complied with the notice requirement.

■ Failure to actually comply with section 40–d mandates dismissal of a section 40–c claim. *See Silver v. Equitable Life Assurance Soc'y,* 168 A.D.2d 367, 563 N.Y.S.2d 78, 80 (N.Y.App.Div.1990). Additionally, failure to allege such compliance may mandate dismissal if a plaintiff is unable to show that notice was actually given. *Harvey v. NY-RAC, Inc.,* 813 F.Supp. 206, 212 (E.D.N.Y. 1993).

■ Defendant has provided this Court with no case law suggesting that the failure to plead compliance with section 40–d's notice requirements renders a section 40–c claim deficient even though it is undisputed that such compliance occurred.

In the context of this case—where discovery is complete, notice was provided within the strictures of section 40–d, there is no allegation that defendant was unaware of the claim, and summary judgment motions have been filed—dismissal of the claim based on

---

cluding page 7) available as an exhibit when it moved for summary judgment.

6. Hertz argues that the policy of calling the issuing agency only applies to prospective customers who are unable to produce *any* license, as opposed to customers who produce licenses that do not match the illustrations in the Guide. In this connection, the "Field Bulletin" states (and Ceriello suggested) that the policy applies in "situations ... in which customers do not have their driver's license with them...." The bulletin also states, however, that the policy applies where the

"customer ... claims to be a licensed driver, but does not have a *valid* license in their [sic] possession...." (Emphasis added.)

7. That the incident occurred on a Sunday does not change this analysis. First, Hertz failed to present evidence that the relevant Puerto Rican agency was closed on that Sunday. Second, Hertz policy instructed the rental agents to make "an effort" to contact that agency; it is clear that this was not done here.

the mere failure to plead notice would be inappropriate.

### 3. *Breach of contract*

█ Defendant further argues that it never entered into an enforceable contract with the plaintiffs. The evidence demonstrates a genuine issue of material fact on this question, however. It is axiomatic that a contract must be supported by consideration. *Holt v. Feigenbaum,* 52 N.Y.2d 291, 299, 437 N.Y.S.2d 654, 419 N.E.2d 332 (1981).

Here, Perez made a reservation with Hertz over a toll-free phone line. In doing so, she claims she provided the defendant with a credit card number in order to secure a car. Another Hertz "Field Bulletin," meanwhile, suggests that in exchange for reserving the car, Perez may have agreed to allow the company to charge her a cancellation fee if she was a "no-show." Thus, there is evidence both that Hertz obligated itself to rent plaintiffs a car and that plaintiffs obligated themselves to do so.

### 4. *Infliction of Emotional Distress*

Plaintiffs also sue for intentional and negligent infliction of emotional distress. Both of these claims must fail.

█ First, even assuming the truth of all of plaintiffs' assertions, they have failed to allege the kind of extreme and outrageous behavior required to establish an instance of intentional infliction of emotional distress ("IIED"). *See Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996) (discussing elements of IIED); *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) (IIED requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as utterly intolerable in a civilized [society]."); *Lyman v. City of New York,* 96 CIV... 2382, 1997 WL 473976, at *2

(S.D.N.Y. Aug. 20, 1997) (listing cases requiring a "strong showing" of "extreme and outrageous conduct"). In this connection, "despite the unacceptability of racial discrimination in civilized society, [the Court has] seen no indication that New York courts would consider the conduct here 'outrageous' per se...." *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985) (where bank selects six minority employees for polygraphing during investigation of missing funds).

█ Second, the plaintiffs have failed to allege, let alone offer evidence, that defendant ever threatened them with physical harm or that their physical safety was unreasonably endangered. Thus, their claim for negligent infliction of emotional distress ("NIED") must fail. *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1996) (discussing standard for NIED); *Muhlrad v. Mitchell,* 96 Civ. 3568, 1997 WL 182614, at 9–10 (S.D.N.Y. April 14, 1997) (dismissing claim for NIED).[8]

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgement is denied as to plaintiffs' claims under section 1981, the NYHRL, the New York Civil Rights Law, and breach of contract, and granted as to the claims for intentional and negligent infliction of emotional distress.

The parties are ordered to appear for a pretrial conference on September 23, 1997 at 4:30 p.m.

So ordered.

---

8. There is a class of cases that allows a plaintiff to go forward on a NIED claim even though the plaintiff's physical safety was not an issue. *See, e.g., Johnson v. State,* 37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590 (1975) (plaintiff falsely informed that her mother had died); *Augeri v. Roman Catholic Diocese of Brooklyn,* 225 A.D.2d 1105, 639 N.Y.S.2d 640 (N.Y.App.Div. 1996) (improper disposal of relative's remains); *Rivera v. Wyckoff Heights Hosp.,* 184 A.D.2d 558, 584 N.Y.S.2d 648 (N.Y.App.Div.1992) (hospital falsely informs parents that their infant is alive). These cases are all based on unusual circumstances not present here.